WOLFGRAM, Appellant, v. DILL et al, Respondents.

(157 N. W. 1059.)

(File No. 3737.   Opinion filed May 27, 1916.)

1.   **Evidence—Fraud in Sale of Land—Agent's Letters, Competency.**

In a suit for damages for fraud and deceit in connection with a land purchase, in inducing plaintiff to purchase land at more than its value, held, that letters written to plaintiff by an agent, whose position in the transaction showed that he was holding himself out as one acting in plaintiff's interest, which letters, while not relating to the tract of land finally sold plaintiff, nevertheless related to the same general transaction, to-wit; to the sale of certain land listed for sale with this and another land agent, should have been admitted in evidence.

2.   **Same—Admissions—Statement of One Realty Agent, as Affecting Co-conspiring Agents, Competency.**

In a suit to recover for fraud and deceit in a land transaction whereby plaintiff was induced to purchase land at more than its value, held, that testimony by way of admissions, as to the statement of a defendant that his real estate firm got plaintiff's property for nothing and that he paid them for taking it, was properly excluded on the ground that it was immaterial and not binding on defendant's partner and another defendant; since it was not a declaration made in furtherance of the alleged conspiracy between defendants, alleged by plaintiff, though it would have been admissible against the maker alone.

3.   **Fraud—Conspiracy—Misrepresentations in Land Purchase—Question for Jury—Sufficiency of Evidence.**

In a suit to recover for fraud and deceit in a land purchase transaction, whereby plaintiff was induced to purchase land at more than its value, held, that whether a conspiracy to defraud plaintiff existed between defendants, was a question for the jury. Held, further, that the evidence of a conspiracy was sufficient to warrant trial court in submitting the question to the jury.

4.   **Evidence—Conspiracy to Defraud in Land Sale—Circumstantial Evidence, Competency, Sufficiency.**

In a suit to recover damages for fraud in a land sale transaction, held, that circumstantial evidence is competent to prove a conspiracy, and, if sufficient to convince the jury, is sufficient in law.

5. **Evidence—Conspiracy, Participation in Conspiracy at Inception, Necessity.**

The fact that one of several defendants, sought to be held for fraud upon plaintiff in a land sale, did not take part in the alleged conspiracy at its inception, nor until the design had been party executed, is immaterial; if he joined the other defendants at any stage of the transaction, and helped to carry it through, and participated in the fruits of the enterprise, he was as much a conspirator as those who originated the design.

6. **Fraud—Representations by One Co-conspirator—Ratification With Knowledge—Similar Representations by Co-conspirators.**

Where two of three real estate dealers, in a transaction of sale of land to plaintiff, knew that their agent was practicing fraud on plaintiff by inducing him through misrepresentations concerning the land, to buy it at more than its value, and with such knowledge ratified the agent's acts and accepted the benefits thereof in proceeds of the sale, they were liable for his fraudulent acts; and where such other defendants also made practically the same misrepresentations as had their agent, it is immaterial as effecting plaintiff, whether the agent was deceiving his co-defendants.

Appeal from Circuit Court, Jerauld County. Hon. Frank B. Smith, Judge.

Action by Albert Wolfgram, against E. E. Dill and another, co-partners as Dill & Vessey, and others, to recover damages for fraud and deceit in a land purchase. From a judgment dismissing the action, after a motion to direct verdict, plaintiff appeals. Reversed.

*Thomas Sterling, Edward E. Wagner,* and *J. G. Bradford,* for Appellant.

*Null & Royhl,* and *Chas. R. Hatch,* for Respondents.

(4) To point four of the opinion, Appellant cited: Tucker v. Hyatt, (Ind.) 44 L. R. A. 129; Patch Mfg. Co., v. Protection Lodge, (Vt.) 60 Atl. 74; Gardner v. Preston, (Conn.) 2 Am. Dec. 91; State v. Ryan, (Ore.) 1, L. R. A. (N. S.) 862; Thomas v. United States, (C. C. A.) 156 Fed. 897, 17 L. R. A. (N. S.) 720.

(5) To point five of the opinion, Appellant cited: Patch Mfg. Co., v. Protection Lodge, (Vt.) 60 Atl. 74.

(6)   To point six of the opinion, Appellant cited: Mayer v. Dean, 115 N. Y. 556-561.

Respondents cited: Mechem on Agy., Sec. 797; Panama & Telegraph Co. v. India Rubber Co., L. R. 10 Ch. App 515, 14 Eng. Rep. (Moak) Page 759; Athlee v. Fink 42 Am. Rep. 285.

POLLEY, P. J.   In this action plaintiff seeks to recover damages for fraud and deceit, which he claims were perpetrated upon him through the false and fraudulent misrepresentations made by defendants, and by means of which he was induced to purchase a tract of land in Jerauld county at a price greatly in excess of its value.   The transaction took place during the summer and fall of 1911. The defendants E. E. Dill and T. F. Vessey were engaged in the real estate business at Wessington Springs, under the firm name and style of Dill & Vessey.   Defendant F. G. Vessey was engaged in the banking business and occasionally dealt in land at Wessington Springs.   Defendant Smith lived at Madison, Neb., where he was engaged in the real estate business with Dill & Vessey.   His chief occupation seems to have been to help advertise lands that were owned by or listed for sale with Dill & Vessey and to procure purchasers for such lands. Dill & Vessey carried an advertisement in a newspaper at Madison, Neb., advertising South Dakota lands for sale, and which advertisement was signed: "Dill & Vessey, Wessington Springs, South Dakota. A. V. Smith, Local Agent."   Plaintiff resided on a farm, owned by himself, in the state of Virginia ,but he had lived at Madison, Neb., and he and Smith had been intimately acquainted for many years. In the spring of 1911 he was desirous of coming to South Dakota, and, having seen the above advertisement in the Madison paper, wrote to the defendant Smith relative to a sale or other disposition of plaintiff's farm in Virginia. Said defendant immediately wrote a letter to plaintiff, and followed it up with numerous other letters in which he advised plaintiff to come to South Dakota and urged him to purchase an 800-acre tract of land owned by T. F. Vessey.   After some correspondence, plaintiff declined this tract, but Smith immediately wrote, offering him another tract of 560 acres of land owned by one W. S. Eagle, and which was listed with Dill & Vessey for sale.   This tract was priced by the owner at $35 per acre, but defendants priced it to plaintiff at $65 per

acre, and finally succeeded in selling it to him at that price without his having seen it. Without going into details of the correspondence that led up to the purchase, suffice it to say that every feature of this land and the improvements thereon were greatly misrepresented to plaintiff; and it was these misrepresentations that induced him to make the purchase.

The defendants Smith and Dill were out of the state when this action was commenced, and neither of them was served with summons or appeared in the case. At the close of plaintiff's evidence, the defendants F. G. Vessey and T. F. Vessey moved for a directed verdict, on the ground that the testimony fails to connect either of them with any of the false representations that were made by plaintiff to induce him to buy the land, that the evidence showed that defendant Smith made all the false representations, that Smith was employed by and was acting as the agent of plaintiff, and that the evidence fails to show that either of the defendants F. G. Vessey or T. F. Vessey had any knowledge of the representations made by the defendant Smith to the plaintiff. This motion was granted, and the action was dismissed at plaintiff's costs. The only question then is: Was there sufficient evidence to take the case to the jury?

It is alleged in plaintiff's complaint that the defendants entered into a conspiracy for the purpose of inducing plaintiff to trade his farm in Virginia for land in Jerauld county that had been listed with Dill & Vessey, and at a price far in excess of its real value and of the price at which it was listed with them; that in furtherance of such conspiracy, and with the intent to cheat and defraud plaintiff, the defendant Smith falsely and fraudulently pretended to act as the agent of plaintiff, and to be acting for his best interests in disposing of his, Virginia farm, and failed to disclose to plaintiff that he (Smith) was acting as agent for the other defendants in disposing of the Jerauld county land.

[1] The letters above referred to (some 19 in number) that were written by Smith to plaintiff, with the exception of one and a portion of another, were all excluded from the evidence by the trial court, on the ground that neither of the defendants T. F. Vessey nor F. G. Vessey was bound by the correspondence between Smith and the plaintiff. We believe these letters should

have been admitted in evidence. While they do not all relate to the tract of land that was finally sold to plaintiff, they were all written with the same object in view and related to the same general transaction, to-wit, the sale of land that was owned by or was listed with the defendants Dill & Vessey for sale. It appears from these letters that, throughout the entire transaction, Smith did pretend to act in the interest of plaintiff, while in fact he was acting in the interest of Dill & Vessey in an endeavor to sell plaintiff a piece of land listed with them for sale and at a price that he knew to be far in excess of its value and in excess of the price at which it could be purchased from the owner. These representations were made wholly in the interest of Dill & Vessey and against the interest of plaintiff. Had Smith been acting in the interest of plaintiff, he would have correctly informed plaintiff of the true character of the Eagle farm, and he would have informed him as to its value and price at which the farm could have been purchased from the owner.

As a result of this correspondence, plaintiff, on the 19th day of July, 1911, signed a contract for the purchase of the Eagle farm, at $65 per acre, amounting to $36,400. This contract was executed by the defendant Dill as the agent for the owner of the land. By the terms of this contract, plaintiff's farm in Virginia was to be taken in part payment, at the agreed price of $15,000. The balance of $21,400 was to be payable at future dates and secured by mortgages on said farm. For the purpose of securing this contract, Dill made a trip to Virginia (at the expense of Dill & Vessey) and while there he examined plaintiff's farm, and he also reiterated the representations that had been made by Smith in regard to the Eagle farm. This contract was executed by Dill without any authority from Eagle, nor had Eagle any knowledge of it for some 60 days after it had been executed, and, when it came to closing the transaction, would not and did not ratify all its terms, and refused to surrender the deed to his land without a cash payment of $2,600. It is at this point that the defendant F. G. Vessey first appears in the transaction. He is quoted by one of the witnesses as having said that, "when they [referring to the defendants Dill and Vessey] found they could not swing the deal, they came to him." From that time on he took an active

part in consummating the trade. About the latter part of August he made a trip to Virginia to examine plaintiff's farm. While there he made practically the same representations relative to the Eagle farm that had been made in the letters written by defendant Smith, and that were made by Dill when he was in Virginia, and, to put plaintiff's mind at rest relative to the Eagle farm, told plaintiff that he was getting a "snap." When the transaction was finally closed, it was defendant F. G. Vessey who made the cash payment of $2,600 on the Eagle land, and the plaintiff's farm in Virginia was deed directly to him. In addition to this he secured two mortgages, aggregating $4,400, from plaintiff on the Eagle land.

There are many circumstances that point to a concerted plan on the part of the defendants Smith, Dill, and T. F. Vessey to trade the Eagle farm in Jerauld county to plaintiff at a price that not only exceeded its real value, but that exceeded the price they were paying to the owner of the land by an amount greater than the entire value of plaintiff's Virginia farm. In other words, they were to get plaintiff's farm for nothing, and a considerable sum of money besides.

[2] At the trial of the case, the plaintiff offered to prove by a witness on the stand, that during the latter part of October, 1911, and while the deal with plaintiff was still pending, defendant Dill made a statement to the witness to the effect that real estate men, in making deals, figure on getting the other fellow's property for nothing, and, referring to the trade with plaintiff, said, "We got Wolfgram's property for nothing, and he paid us for taking it." This offer was rejected by the trial court, on the ground that it was immaterial, and not binding on the defendants T. F. Vessey and F. G. Vessey. The objection was properly sustained. This statement was in the nature of an admission or declaration against interest as to Dill, and, had the action been against him, said statement would have been admissable. But it was not a declaration made in furtherance of the alleged conspiracy, and was not binding as against either of the defendants in this action.

[3-5] Whether a conspiracy existed or not was, of course, a question for the jury, and we believe there was sufficient evi-

dence tending to show the existence of a conspiracy to have warranted the trial court in submitting the question to the jury. True, there was no direct evidence of a conspiracy, but that is not material. Circumstantial evidence is competent to prove a conspiracy, and, if sufficient to convince the jury, is sufficient in law. Where two or more persons are found to be working for the accomplishment of the same definite object, it may be inferred that they are pursuing a preconcerted plan or arrangement to accomplish that object. Nor is it necessary to show that any particular member of an alleged conspiracy was a party to the wrongful enterprise at its inception, for "every person entering into a conspiracy or common design already formed is deemed in law a party to all acts done by any of the other parties, either before or afterwards in furtherance of the common design." Patch Mfg. Co. v. Prot. Lodge No. 215, 77 Vt. 294, 60 Atl. 74, 107 Am. St. Rep. 765. Therefore the fact that F. G. Vessey is not shown to have taken any part in the enterprise until the design had been partly executed is immaterial. If he joined with the other defendants at any stage of the transaction, and helped to carry it through and participated in the fruits of the enterprise, he became as much a conspirator, if in fact a conspiracy existed, as those who originated the design.

[6] Respondents contend that the misrepresentations were made solely by the defendant Smith, but this contention is not borne out by the record. Not only did the other defendants ratify and adopt all of Smith's fraudulent acts, but the evidence shows that both Dill and F. G. Vessey, while in Virginia, made practically the same representations that had been made by Smith. Whether or not Smith was deceiving his codefendants is immaterial, so far as this case is concerned. They knew that he was endeavoring to practice a fraud on plaintiff, and, with such knowledge, they ratified his acts and accepted the benefits thereof.

It is our opinion that the learned trial court erred in directing a verdict for the defendants, and that, for such error, a new trial should be awarded. The judgment and order appealed from are reversed.